IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Jan 17, 2017

IN RE:

STEPHEN NICOLAS LYNCH
GWENNA KAY LYNCH,

Case No. 11-12457-M
Chapter 7

Debtors.

## OPINION REGARDING DISGORGEMENT OF FEES

Before the Court is Debtor Stephen Lynch's Motion to Disgorge Fees Paid to Martha Hyde (Docket Entry 364) and Martha Hyde's Response (Docket Entry 369). This Court held an evidentiary hearing on this matter on November 1, 2016. After reviewing the evidence and applicable law the Court finds that the Motion should be granted, Hyde should be allowed to retain $22,624.02 in fees and costs paid to her, and shall disgorge the remaining amounts of attorney fees paid to her on behalf of Stephen Lynch.

### Jurisdiction

This Court has jurisdiction to review and determine attorney fees pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and 11 U.S.C. § 329(b).

### Findings of Fact[1]

Hyde did not dispute any of the facts set forth in Lynch's Motion to Disgorge with the exception of the statement in No. 86 that each and every action taken by Hyde was of no benefit to Lynch. Therefore, the Court adopts the facts set forth in the Procedural History portion of the Motion with the exception of No. 86. The Court also admitted all eighty-six exhibits offered by Lynch. Hyde neither contested Lynch's exhibits nor offered any of her own.

---

[1]To the extent that a Finding of Fact may constitute a Conclusion of Law, it is adopted as such.

In addition to the specific facts set out in Lynch's Motion, the Court makes the following finding of facts surrounding this case:[2]

Lynch and his wife, Gwenna Lynch, filed bankruptcy in 2011. Their filing was precipitated by a business dispute Gwenna had with her former employer and business partners.[3] This dispute resulted in the Lynches filing bankruptcy and losing their home in a state court foreclosure action. Gwenna's former employer and business partners filed a claim against the bankruptcy estate and an adversary case seeking to except their claim from discharge. The Lynches entered into a settlement agreement regarding that claim and adversary case, which was approved by Bankruptcy Judge Terrence L. Michael in November of 2012. The Lynches were given time to settle the $ 1,235,875.49 claim for $ 140,000. However, when the Lynches could not come up with the $140,000, an agreed judgment of $1,078,064.33 ("Kleinco judgment") was entered against them. Stephen Lynch maintained that he never agreed to the settlement and that Gwenna forged his signature on the settlement agreement. Nonetheless, he did not attempt to communicate this to Judge Michael nor file any pleadings with the court attempting to set aside the settlement.

BOKF, NA held the mortgage on the Lynches' home. In 2012, BOKF, NA obtained relief from the automatic stay and proceeded to foreclose its mortgage. Eventually, their home was sold at a sheriff's sale. The Lynches separated in 2012 and divorced in early 2014.

Stephen Lynch wanted to set aside the Kleinco judgment and regain his home. He characterized himself as being in desperate need of legal counsel. He hired attorney Martha Hyde to attempt to overturn the settlement and agreed judgment and appeal the state court foreclosure

_____

[2]Some of these facts are repetitive of those included in Lynch's Motion to Disgorge but are provided as background and context for the Court's Conclusions of Law.

[3]Details regarding this dispute, the foreclosure, and bankruptcy case are found in this Court's Opinion and Order of Dismissal, Adversary Case. No. 14-1059, Document 105.

action.  He knew that she was not an experienced attorney.[4]  But, Hyde was the only attorney he could find who was willing to represent him.  Lynch's girlfriend at the time he hired Hyde was Sandy Brooks.[5]  Brooks paid for Lynch's legal bills.  Hyde was aware of this relationship and met with both Lynch and Brooks at various times to discuss matters that came up during her representation of Lynch.

In an attempt to set aside or gain relief from the Kleinco judgment against Lynch, Hyde filed a Notice of Appeal and/or Motion to Vacate Void Order in the bankruptcy case in August of 2014, and filed a Notice of Appeal with the Tenth Circuit BAP.  The BAP dismissed the appeal as untimely, being filed 623 days after the Order Approving Compromise was entered.  However, Judge Michael gave Lynch time to provide additional information in support of the Motion to Vacate Void Order.  Hyde did not respond to Judge Michael's offer.  Instead, she sued him on Lynch's behalf by filing Adv. Case 14-1059.  In Hyde's view, the best legal strategy for setting aside the agreed judgment was to collaterally attack Judge Michael's Order Approving Compromise.  Hyde named the purchasers at the sheriff's sale as defendants, as well as the Osage County District Court and Tulsa County District Court because those courts had been the site of the foreclosure action and other state court actions against the Lynches.  As a named defendant, Judge Michael was forced to recuse and obtain counsel to seek dismissal on his behalf.  The adversary was assigned to this judge.

Hyde amended the complaint to dismiss Judge Michael.  She added thirteen separate causes of action, including one for conspiracy.  She also added new defendants:  the bankruptcy Trustee and

---

[4]Hyde stated that she was admitted to practice law in 2012.

[5]Brooks and Lynch began dating in late 2013.  At the time of this hearing, Brooks and Lynch were engaged to be married.  Brooks is the ex-wife of country music artist Garth Brooks.  According to Hyde, some of the actions taken in the main case were to protect Brooks' identity and privacy.

several attorneys. These attorneys represented creditors of Lynch but otherwise had no connection to him. Hyde admitted to this Court that she believed Judge Michael to be biased against Lynch and that the bankruptcy process was corrupt, so she sued Judge Michael to gain his recusal and have the adversary assigned to another judge. Hyde said she did very little research into whether she should name individual attorneys as defendants for representing creditors of Lynch. Her Invoice for Legal Services dated December 10, 2014 seems to confirm this. It includes a charge of $2,250 for 18 hours of work performed by an unnamed paralegal, described as "Legal and Evidentiary Research into additional grounds for prosecution and of additional defendants to be joined in the Complaint, to be set out in First Amended Complaint." Hyde concluded that she had sufficient legal authority to sue the Trustee and the individual attorneys personally. Prior to answers being filed by the defendants, Hyde filed a partial motion for summary judgment.

This Court dismissed the adversary case with prejudice, finding virtually no plausible grounds indicating any entitlement to relief. Hyde and Lynch appealed the dismissal order to the United States District Court for the Northern District of Oklahoma. Several appellees filed a joint motion for sanctions against Hyde for action taken during the appeal. Their allegations against Hyde were referred to the Northern District's Committee on Admissions and Grievances. After Lynch terminated Hyde's representation and hired current counsel, Ron Brown, Lynch dismissed this appeal.

After dismissal of the adversary case, the Trustee sought to conduct a 2004 exam of Lynch to determine who was financing his litigation efforts and whether Lynch had undisclosed assets that might be available to pay claims against the estate. Hyde fought this effort for approximately nine months – from May 2015 through January 2016 – claiming that the Trustee lacked standing to initiate and conduct a 2004 exam of the Debtor, and that Lynch's source of funding was privileged

information, protected by the Sixth Amendment. This Court ordered Lynch to appear for the 2004 exam. Hyde filed separate appeals with the District Court and with the BAP, but eventually dismissed the appeals. Hyde claimed that her work surrounding the 2004 exam was at the direction of Lynch to protect the identity of Brooks. However, even after Brooks' identity was disclosed in October of 2015, Hyde continued to fight the exam orders. Because of her conduct during the first attempt at the 2004 exam, the Court had to admonish Hyde "to refrain from using expletives and profanity during the exam, and to conduct herself respectfully and professionally."[6] Hyde's first Disclosure of Compensation of Attorney for Debtor certified that she was paid $ 40,275.00 for matters related to the 2004 exam.[7]

The Trustee sought additional sanctions and attorney fees against Hyde and Lynch regarding their refusal to cooperate regarding the 2004 exam. Hyde and Lynch responded with their own request for sanctions and attorney fees. This Court held an evidentiary hearing on those matters on February 17, 2016. Hyde filed a post-trial 27 page motion seeking sanctions against the Trustee including attorney fees of $ 47,275.00 and several other legal rulings from the Court. After that hearing, Lynch terminated Hyde's representation of him. He hired current counsel, Ron Brown. Brown secured a settlement with the Trustee, paying the estate $50,000.00. These funds were used to pay some of the Trustee and estate's legal fees related to the adversary case and the 2004 exam. Brown also dismissed Lynch's appeal of the Order of Dismissal of the adversary case, and settled the sanctions motions against Lynch filed by former defendants in the adversary case.

Lynch recognized that Hyde was inexperienced in bankruptcy matters and encouraged her to bring in more experienced representation. He did not know that her only bankruptcy experience

---

[6]Document 215.

[7]Document 270.

was filing a case for her ex-husband, Christian Fleisher.  Lynch found out about Judge Michael's offer to provide supplemental information regarding the Motion to Void after the deadline to respond had run.  Lynch claims he did not consent to suing Judge Michael or the individual attorneys who represented creditors in the bankruptcy and parties in the foreclosure action and state court cases but was informed by Hyde after the pleadings had been filed.  Neither the original nor amended complaints include his verification. He only recently reviewed them.  Lynch claims his role was to provide the story behind the proceedings and that Hyde developed their strategy and made all decisions related to his legal matters.  Both Hyde and Lynch testified that they were unable to find any local attorney to assist them.  The stated reasons were that no attorney wished to be involved in a case in which the client and his counsel would sue the presiding judge and sue individual attorneys for representing their clients.

Hyde did, however, hire Jeff Dickstein in 2014 to assist her in pursuing the adversary case. His hourly fee was $ 125.00.  Hyde found Dickstein on craigslist.com.  She testified that he is an attorney licensed in another state; however, she identified him as a paralegal in her Amended and Corrected Disclosure of Compensation of Attorney for Debtor filed March 7, 2016.[8]  Based upon Hyde's Amended and Corrected Disclosure, Dickstein was paid $ 11,412.00 in 2014 and $ 19,475.00 in 2015 on Lynch legal matters.

Hyde employed her ex-husband Christian Fleisher to perform accounting services throughout her representation of Lynch and to help them "take down the Kleins."  Fleisher had a master's degree in business, but he was not a CPA.  Lynch authorized Fleisher's employment; however, Fleisher's relationship with Hyde was never disclosed to him. Fleisher was paid $ 3,480.00 in 2015 and $ 15,900.00 in 2016.  His fee was $ 100 per hour.  Fleisher concluded that the Kleinco judgment

---

[8]Document 295.

was based upon a fraudulent proof of claim.  Based upon Fleisher's investigation and report, Hyde

decided to file a criminal complaint against the Trustee and an attorney with the Department of

Justice.  Hyde admitted to this Court that Lynch gained no benefit from Fleisher's work but

explained this was because Lynch chose to terminate Hyde's representation and abandon the relief

she sought on Lynch's behalf.

Hyde hired others to assist her in 2015.  Paralegal Marcia Hirao was located from

craigslist.com and was paid $ 1,800.00.  Three investigators were hired but their duties were not

described to the Court.  Hyde also hired De Novo to assist her in filing the appeal of this Court's

Order of Dismissal to the District Court.  According to Hyde, De Novo is an appellate firm located

in Miami, Florida.  Lynch was only familar with Dickstein, Fleisher and Hirao.  With the exception

of paralegal or attorney Jeff Dickstein, no detailed time records supporting the fees charged by those

Hyde hired to assist her were provided to this Court.

On February 25, 2016, after Lynch indicated that he intended to terminate her representation

of him, Hyde sent a letter to him and Brooks objecting.  She urged him to reconsider, to pursue

charges of criminal bankruptcy fraud against the Trustee and another attorney, and attached an

invoice for legal services owed.  The following excerpts from the letter are revealing:

> I want to assure that the reason I have continued to offer you hope is because
> it has been my professional opinion that there is hope.  Today, as I write this letter
> to you, it is still my professional opinion that you have a very good case and you have
> a very good chance of winning it.  The dismissal of the Adversary Proceeding was
> improper and is a reversible decision.
>
> . . .
>
> When we sat together in my living room in December 2014, we all knew that
> we were facing a corrupt Trustee and corrupt attorneys helping a corrupt creditor . .
> . .[T]he Trustee . . . attempt[ed] to manufacture conspiracy charges under the guise
> of a rule 2004 Examination . . . .  We also didn't realize that the court would protect
> and shelter his actions even though they were an abuse of his position and an abuse

of process.  Remember that it was your decision at that point to try to protect Sandy's identity.  Remember that ultimately, all decisions in this case have been yours.

. . .

All that I can say about anyone else's evaluation of my performance up until now is this; it is easy to be a Monday morning quarter back (*sic*) when you can see from the record what the next move from the opponent is going to be. . . .I named Judge Michael in the initial Adversary Complaint . . . . That was a mistake. . . . But I can tell you this.  Judge Michael did in fact "rubber stamp" your Compromise and in that act he was derelict in his duty.... [Attorney] and [Trustee] clearly deceived him...they committed fraud on the court by withholding material facts . . . .[9]

. . .

As for the Motions for Sanctions filed by the defendants in the Adversary Proceeding, you need to remember that those Motions were filed against me under Fed.R.Civ.P. Rule 11. . . . [U]nder Rule 11 the Sanctions are brought against the attorney for signing the complaint. I can only blame myself if I did not make it clear that **those motions for sanctions were filed against me to try to pressure me to think of myself and my career and to put my self-interest before my loyalty to you, my client, so that I would advise you that we should withdraw the lawsuit, lick our wounds and go home.** As things have progressed, and the Trustee has become more vicious, I cannot tell you how many times over the past year I have been advised to save my skin and get out of this case.  But I have always put you first and I always will.  You want Ron Brown? Great. Just don't settle yet. But if you do, I ask that you negotiate a dismissal of the sanction motions still pending in the Adversary Proceeding as part of the settlement. I brought the lawsuit on your behalf.

. . .

If you go in there and pay anyone a penny you are caving to a bunch of thugs and bullies.

(Emphasis in original.)

During the evidentiary hearing, Lynch admitted that it was a mistake to file the BAP appeal because it was out of time.  Besides holding the opinion that Judge Michael was biased against her client, Hyde offered an excuse for deciding to file the adversary instead of responding to Judge

---

[9]The Court chooses not to name the individual attorneys herein.  It refuses to give any credence to Hyde's accusations against them.

Michael's offer to supplement her Motion to Vacate. Hyde said that Judge Michael did not allow her sufficient time to prepare and submit supplementary information. It did not occur to her to ask him for more time to gather the information, nor that a simple affidavit from Lynch that his ex-wife signed the settlement agreement without his knowledge or consent may have been sufficient. Instead of preparing a response for Judge Michael, she spent that time to draft the adversary complaint. She also stated that Lynch wanted a jury trial so she intentionally missed Judge Michael's deadline and proceeded to file the adversary case.

Hyde was the subject of at least six sanctions motions stemming from her actions in the adversary and bankruptcy cases. All were settled. As her client, Lynch was also the subject of several sanctions motions. Lynch paid the Trustee $ 50,000 to settle the Trustee's claims against him, and $ 5,000 to settle sanctions actions brought by the purchaser of Lynch's property from the sheriff's sale.

Hyde's medical condition and treatments was the subject of some examination at trial, as well as earlier sanctions' motions brought by the Trustee. Lynch contended that Hyde was not physically fit to represent him during much of the time she was his attorney. The Court has reviewed the medical records furnished it and acknowledges that Hyde received medical treatment. However, the Court never observed any physical impairment that impacted Hyde's performance when she appeared before it. Lynch stated that she did disclose some issues she experienced regarding prescription medication. Hyde stated that any medical issues she may have had did not impact her work for Lynch. The prescription medication that contributed to many of her issues was discontinued in May of 2015. She admitted to having some memory issues and difficulty finding words, however this did not impact her performance. Based upon the information before the Court, including the billing records, timeline of her health records, and legal strategy pursued throughout

her representation of Lynch, the Court does not believe that any medical issues Hyde may have had were the cause of her unreasonable billings and failure to provide adequate and beneficial legal representation to Lynch, with the possible exception of her filing two motions to reconsider in the fall of 2015.

The Court asked Hyde to describe the matters in which she prevailed for her client.  Hyde responded that she was able to stop an asset hearing from going forward in state court.  In her opinion, she was a zealous advocate for her client and performed the duties of an attorney for her client.  She also believes that everything she did as Lynch's attorney paved the way for him and Brown to be able to settle with the Trustee and the other parties after her termination.

Hyde denied that any fees charged and collected were unreasonable or excessive.  In her opinion, a competent attorney is one who has the ability to learn what needs to be done and then proceeds to execute the job.  By her definition, she competently represented Lynch. She testified that she communicated in great detail with Lynch, although her invoices do not reflect this.  She viewed her inexperience as more of a litigation problem than a bankruptcy problem.  Her hourly fee of $ 150 was reasonable due to her inexperience.  And, she viewed the number of hours billed as reasonable rather than excessive because she was required to spend more time as a new, inexperienced attorney. Hyde calculates that Lynch still owes her $37,000 in unpaid attorney fees.  However, she does not intend to pursue collection of those fees.

Hyde's invoices do not include detailed information regarding work performed for Lynch. They are incomplete, vague and do not match Trust Account worksheets or the Amended Disclosure Statement.  The evidence regarding time entries presented to the Court came solely from Lynch's records.   Hyde offered no exhibits at all.

One portion of the time records submitted begins on March 2, 2015 and ends September 25,

2015, a span of seven months.  This was a lengthy period of time with 82 different time entries involving over 400 billable hours.  This indicates that Hyde did not provide regular monthly statements with detailed time entries to keep Lynch informed about the work she was incurring on his behalf.  In her earliest invoices dated July 17, 2014, October 16, 2014 and December 10, 2014, Hyde charged flat fees for legal services, and included basic descriptions such as "legal research and drafting."  The first invoice she sent to Lynch that includes some detailed time records is dated March 5, 2015 for work performed from December 30, 2014 through March 4, 2015.  It appears she did not begin to keep detailed records until the end of December 2014.  Although Lynch  stated that her Amended Disclosure of Compensation Statement is true and correct, she acknowledged some discrepancies or inconsistencies between it and the invoices sent to Lynch.  The Court finds that the invoices are the most accurate evidence of the charges billed.

Hyde's invoices contain only minimal descriptions of the attorney time.  As did Lynch's counsel, this Court struggled to reconcile Hyde's invoices with documents filed in the various courts on Lynch's behalf and was unable to do so.  Her method of recording her time made it  difficult to categorize and separate bankruptcy matters from state court matters.  However, it appears that a portion of fees paid to Hyde were for work performed in the state court cases.  These charges appear to this Court to be unrelated to the bankruptcy case.  Work performed in those cases cannot be the subject of this Court's review.[10]  The Court finds that fees and costs paid to Hyde for any work regarding the state court cases may be retained. The Court also finds that the initial research and attorney billings regarding setting aside or gaining relief from the Kleinco judgment are reasonable.  Lynch's primary goal was to gain relief from that judgment.  It was reasonable for Lynch to research

---

[10]*See Matter of Hargis*, 895 F.2d 1025 (5th Cir. 1990).  This Court was given virtually no information regarding the work performed or status of the state court matters.

possible options including setting aside the bankruptcy court's order, seeking an appeal, or some

other avenue of relief.  The Court finds that the following entries for legal services were reasonable

and are not subject to disgorgement:

**Exhibit 2 - 1 Invoice for Legal Services dated July 17, 2014**
Addendum A - Case Analysis, Legal Research and Drafting for the Filing of
    Brief in Chief for Supreme Court Appeal      $3,000.00
Addendum B - Case Analysis, Legal Research and Drafting for the Filing of
    Appeal regarding issue of void Bankruptcy Judgments      $4,000.00

**Exhibit 2-2   Invoice for Legal Services dated October 16, 2014**
Addendum C - Case Analysis, Legal Research and Drafting for Response to Order to Show Cause
    filed in 10th Cir. BAP      $1,500.00
Addendum D - Case Analysis, Legal Research and Drafting for Combined Reply to Appellants'
    Responses, filed in the Okla. Supreme Court
    (initial charge was flat fee of $1,500.00.  Hyde asked for $3,000 and it appears Lynch paid
    $3,000)      $3,000.00
Addendum E - Representation at one Asset Hearing in Tulsa County Case No. CV-2013-38;
    Research and Drafting for Motion to Stay/Suspend Collection of Judgment
    and Asset Hearings      $1,750.00
Costs related to Okla. Sup Court appeal      $  505.70

**Exhibit 2 -4 Invoice for Legal Services dated December10, 2014**
Costs:
Filing fee for Adversary Proceeding Complaint      $ 350.00
appearance at District Ct/Motion to Suspend Collection/Nov. 13, 2014      $ 500.00
Appearance at District Ct Asset hearing/nov. 20, 2014      $ 250.00
Postal for Service of Summons in Adversary Proceeding      $  71.85

Fees:
MH-Legal Research, drafting and filing new Motion to Stay or Modify Judgment
in District Cou ...(flat fee)      $1,500.00
Paralegal-Legal and Evidentiary Research into additional grounds for prosecution and of additional
defendants to be joined in the Complaint, to be set out in First Amended Complaint
Hourly ... $125.00 x 18      $2,250.00

**Exhibit 2 -7-8 03.05.2015 Statement for services 12/22/14 -0 03/04/15 (pg 1 not provided)**
**Martha Hyde billings at $150/hour:**

| DATE | DESCRIPTION | HOURS | AMOUNT |
|------|-------------|-------|--------|
| 01/06/15 | Prep certified evidence from Osage County | 1.3 | $   195.00 |

| 01/13/15 | Filed motion for stay, phone w/Daffern, joint stip. Re. Collection | 3.3 | $ | 495.00 |
| 01/15/15 | Draft Joint Stipulation | .80 | $ | 120.00 |
| 01/15/15 | Attend hearing and file joint stipulation | 1.8 | $ | 270.00 |
| 01/23/15 | Phone call and letter re proffer from purchasers | 1.0 | $ | 150.00 |
| 02/06/15 | Review Motion to Stay Supreme Court | .80 | $ | 120.00 |

**Jeff Dickstein billings at $150/hour:**

| DATE | DESCRIPTION | HOURS | AMOUNT | |
|---|---|---|---|---|
| 02/05/15 | Wrk on Motion to Stay Appeal | 3.8 | $ | 570.00 |
| 02/06/15 | Wrk on Motion to Stay Appeal, file and serve | 3.0 | $ | 450.00 |
| 02/20/15 | Wrk on Sup. Crt. Mot to Dismiss, conf w/client | 4.0 | $ | 600.00 |
| 02/21/15 | Finish and file Sup Crt. Mot to Dismiss | 1.5 | $ | 225.00 |

**Costs:**

| DATE | DESCRIPTION | AMOUNT | |
|---|---|---|---|
| 02/23/15 | Mailed OK Sup Crt Motion to Dismiss | $ | 38.97 |

**Exhibit 2 - 15-18 (Court presumes these are all Hyde hours but not identified)**

| DATE | DESCRIPTION | HOURS | AMOUNT | |
|---|---|---|---|---|
| 04/20/15 | Reviewed Appellee's Joint Response in State Appeal with Notes for Reply CJ-2014-2294 | 1.75 | $ | 262.50 |
| 04/24/14 | Drafted Leave to file a Reply and filed it with COCA | 2.50 | $ | 375.00 |
| 05/15/15 | BOK & Kleinco Motions for Sanctions - reviewed, COCA Opinion reviewed | ~~1.00~~ .50 | $ $ | ~~150.00~~ 75.00 |

The Court finds that the total amount of fees and costs billed and paid Hyde for state court

matters and initial research to set aside judgment is $ 22,624.02.  This amount is not subject to disgorgement.

The Court finds that all other billings and amounts paid to Lynch were unreasonable.  The work performed by Lynch was excessive, unnecessary, without basis in law or fact, and of no value to Lynch.  The Court finds that the time entries do not reflect that she communicated regularly with her client.  Hyde's invoices indicate she conferenced with Lynch on only six occasions from the time she began keeping time records in late December 2014 through her termination the end of February 2016:  January 28, 2015 (1 hour), March 8, 2015, May 19, 2015 (.5 hours), June 6, 2015 (.5 hours), October 26, 2015 (.5 hours), November 9, 2015, and February 2, 2016.[11]   According to her Amended Disclosure Statement she billed $218,650.65 and was paid $180,813.00 for 2015 and 2016.[12]

**Conclusions of Law and Analysis of Hyde's Representation**[13]

Lynch seeks disgorgement of all fees paid to Hyde pursuant to 11 U.S.C. § 329(b).  This statute authorizes bankruptcy courts to examine the fees charged to a debtor by his attorney, and order disgorgement of fees:

> Any attorney representing a debtor in a case under this title . . . whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid . . . . If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment.

---

[11]The Court includes time billed when specifically listed by Hyde.  The remaining dates include descriptions of other legal services as well as a notation indicating some type of communication with the client.  These do not include a breakdown of time spent on each service.

[12]The numbers on the Amended Disclosure are not reconcilable but Lynch verified that he paid her $ 213,500, and is seeking disgorgement based upon that amount.

[13]To the extent that a Conclusion of Law may constitute a Finding of Fact, it is adopted as such.

Section 329 does not define what "reasonable value" is, but Section 330(a)(3) sets forth certain criteria for determining "reasonable compensation" to be awarded professional persons:

> [T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —
>
> (A)   the time spent on such services;
>
> (B)   the rates charged for such services;
>
> (C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Courts should not allow compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case. 11 U.S.C. § 330(a)(4)(A).

Reasonable value of services "is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." COLLIER ON BANKRUPTCY ¶ 329.04 (16th ed. 2016)(citing *Hale v. U.S. Trustee*, 509 F.3d 1139 (9th Cir. 2007)). In determining "reasonable compensation" for a debtor's attorney, a court must assess the quality of legal representation by evaluating how effectively, how efficiently, and how professionally a case was prosecuted. *In re*

*Collida*, 270 B.R. 209 (Bankr. S.D. Tex. 2001). Work that reflects a lack of competence does not deserve to be compensated. Bankruptcy courts are given this responsibility to carefully scrutinize attorney fees to prevent overreaching by a debtor's attorney in situations that often involve desperate and vulnerable clients.

This Court has more than twenty years' experience in evaluating attorney fee applications and, thereby, assessing the competence and quality of work of attorneys who practice before it. After reviewing the evidence presented and evaluating Hyde's work in this case and the adversary case, the Court can only conclude that she took advantage of Lynch, a client who had a benefactor with the resources to pay her fees. This is made clear in the excessive amounts of time spent in general research and drafting, in the numerous people she hired for unsubstantiated duties and billings with little vetting or concern for their qualifications. She disclosed that she had only one other client during the entire time she worked on Lynch's legal matters. Her billings reflect little communication to Lynch of the work she did. It was in her own best interest to deliberately refuse to accept Judge Michael's offer to provide information regarding her Motion to Void the Order Approving Compromise and file the adversary case instead. She kept the litigation going and launched investigations to ensure that she could continue to be paid. Lynch stated that she kept offering him hope so he and Brooks kept paying her to represent him. As her February 25, 2016 letter indicates, she fueled Lynch's sense of desperation and dependence upon her by repeatedly assuring him that the system was corrupt, that everyone involved, including the Judge, the Trustee, and officers of the court, were corrupt, that everyone was conspiring against him and using the court process to defraud him. This appears to be the poster case for overreaching by a debtor's attorney and taking advantage of a desperate and vulnerable client.

Hyde failed to provide any evidence that the services she provided Lynch after her initial

research regarding gaining relief from the Kleinco judgment were reasonable, necessary or beneficial. She failed to convince the Court that the services listed were necessary or actually performed. As the Court noted in its Findings of Fact, her billings were vague. They are recorded in round numbers, indicating that she estimated time and may not have kept contemporaneous records. Her billings were excessive for the work that was actually performed. For example, her time entries from July 22 - 30, 2015 for preparing an unopposed three page motion to enlarge time to file a brief  total 40.5 hours for an attorney fee of $ 11,025.00. She defended multiple sanctions motions and billed her client for those fees. She filed two appeals to the District Court, and one to the BAP. She attempted to file a motion to dismiss the second District Court appeal. Because that motion was deemed "unintelligible" by the District Court, and because she did not timely refile a new motion to dismiss, the District Court dismissed the appeal. Shortly after the order of dismissal was entered, Hyde filed a 10 page motion to dismiss with 50 pages of attachments. The District Court declared the motion to be moot. It appears that she billed 8.5 hours for this.

Hyde filed numerous motions to reconsider orders entered by this Court. She delayed the completion of Lynch's 2004 exam from May of 2015 until January of 2016 by filing emergency motions, failing to comply with this Court's orders to appear, and filing appeals. She routinely filed motions with multiple requests for relief. Her motions and briefs were often unintelligible. She sought sanctions against the Trustee and disgorgement of funds approved and paid to the Trustee without legal or factual basis. She failed to seek stays of some orders of this Court while she appealed them, claiming she was unfamiliar with court procedures. Other times, she filed motions to stay pending appeal. She missed deadlines for filing objections, prompting the Court to enter

orders granting requested relief, only to have Hyde file motions to reconsider.[14] None of this activity was of any benefit to her client. She failed to inform herself of the procedures of the Court, and missed deadlines for filing objections. Her work clearly reflected a lack of competence by pursuing legal arguments and strategies unsupported by the law or the facts.

Hyde admitted to this Court that she did not think Judge Michael was unbiased towards her client. She named him as a defendant for the purpose of preventing him from hearing the adversary case. She also named the individual attorneys in an attempt to gain leverage over their clients, hoping to coerce the attorneys into recommending their clients accede to her and Lynch's demands to release him from the judgment and return his home to him. This admitted strategy of threats and manipulation of the process of the court is reprehensible, without justification or cause. Any reasonable, competent attorney – regardless of years of experience – knows that this is conduct that is prejudicial to the administration of justice, and violates the Rules of Professional Conduct. Her inexperience is not a plausible excuse here. She simply failed to respect the applicable law and embarked on a "scorched earth" strategy based upon what only she perceived to be a corrupt gang of attorneys, their clients and the court. This was not reasonable nor beneficial to Lynch. It continued even after Lynch ended her representation of him when she filed a criminal complaint against the Trustee and a private attorney. Although she now admits that suing Judge Michael was a mistake, it was clearly part of her overall trial strategy to do whatever she could to set aside the Kleinco judgment and continue to bill her client. Her client would have been much better served had she attempted to settle the judgment itself rather than launching personal attacks and attempting to manipulate the judicial process.

---

[14]See Order entered June 25, 2015 denying Lynch's Emergency Motion to Vacate Motion to Reconsider and Vacate Order regarding 2004 Exam, Document 183. See also Order entered October 9, 2015 denying Lynch's Emergency Motion to Quash, Document 207.

Hyde also failed to provide reasonable or competent legal services by making false and misleading statements regarding the facts and applicable law. At page 6 of her Response to Lynch's Motion to Disgorge Fees Paid, she cites *Wabaunsee v. Harris*, 1980 OK 52, 610 P.2d 782, 784 (1980) for the proposition that errors in judgment or mistakes on points of law made by an attorney while representing her client are not the basis for a disgorgement of fees. However, an important qualification for that statement is completely ignored by Hyde, indicating an attempt to misrepresent the holding and mislead this Court.[15] The actual statement in *Wabaunsee* is:

> An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law *which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers.*[16]

*Emphasis added.* Hyde's arguments and actions were not based upon unsettled points of law or for which reasonable doubt would be admitted by well-informed lawyers. Her positions were based upon erroneous conclusions of basic foreclosure and bankruptcy law.[17]

She also failed to accept settled law regarding the elements for bringing an action under Fed. R. Civ. P. 60 for a void action, and a bankruptcy trustee's authority to conduct a 2004 exam of a debtor. This Court set out in great detail why her Amended Complaint presented no grounds to set aside the bankruptcy court's Order Approving Settlement regarding the Kleinco claim. Hyde alleged and pursued a conspiracy theory dating back to 2006, five years before Lynch filed bankruptcy. This

---

[15]The Court is reminded that this is not the first time Hyde misrepresented case law to this Court. See Document 215, nn. 1 and 2 regarding missing quotations and case holdings. See Adv. Case No. 14-1059, Opinion and Order of Dismissal, Document 105, p. 14, n. 22.

[16]¶8, quoting *Collins v. Wanner*, 1963 OK 127, 382 P.2d 105. *Collins* cites to several legal authorities and cases.

[17]See Case No. 14-1059, Opinion and Order of Dismissal, Document 105.

was long before any of the defendants even knew Lynch.  This was an allegation that she knew to be false, or at least without any basis at the time she made it.  Her billing records reflect that she hired investigators to come up with support for her theories in 2015 and 2016, long after she filed the Adversary Complaint and First Amended Complaint.  She simply alleged that the defendants–including the attorneys sued personally just for representing their clients – acted in furtherance of "said conspiracy."  There were  no other facts alleged that the Adversary Defendants engaged in any conduct that was illegal or done with the unlawful intent to harm Lynch.  Instead, Hyde based the entire adversary case on several misconceptions of basic foreclosure and bankruptcy law.  She also omitted critical facts from her Amended Complaint which appeared to be designed to mislead the Court. This is consistent with her misrepresentation and omissions of legal authorities cited to the Court.

The Court was stunned that Hyde chose attorneys and experts to assist her by shopping for them on the website Craigslist.  Traditional avenues for finding and vetting attorneys such as the Lawyer Referral Service of the Oklahoma Bar Association, County Bar Associations, and Martindale-Hubbell Legal Directory seem much more reliable and trustworthy sources of information rather than searching classified ads on the internet.

Astonishingly, Hyde takes credit for Lynch's ability to finally settle his agreed judgment with Kleinco, suggesting that had he "stayed the course" and continued to litigate with her as his attorney, he would have received a better result.  This legal opinion is another illustration of her incompetence and unwillingness to objectively assess her conduct.  It also informs and confirms the Court's view that her legal strategy was designed to benefit herself rather than her client.  What seems clear to the Court is that Lynch's decision to fire Hyde and hire Ron Brown was the decision that led to the ultimate resolution of his problems, most of which were created by Hyde, and the settlement of the

Kleinco judgment. Brown was hired after a hearing on sanctions in February of 2016. Within a few months, settlements with the attorneys that had been personally sued, as well as the Trustee, were entered. As was her view and tactic throughout her representation of Lynch, Hyde disparaged Brown's hiring by Lynch and insinuated that his motives in entering the case were suspicious since he had refused to join the Hyde-Lynch team when approached in the summer of 2015. This was her tact against everyone touched by this case — they were all a part of a conspiracy to destroy her and her client by abusing the state and bankruptcy court processes. She also explained that she was treated with disdain and disrespect because she is a woman. Even if the Court were to assume that such treatment was real and not imagined, it was likely the consequence of her own actions which included baseless accusations and threats of criminal prosecution, not because of any inherent bias against women attorneys.

Finally, the Court was appalled that after Lynch terminated her representation of him, Hyde filed a criminal complaint with the Department of Justice against two highly respected and competent attorneys.

These are not the reasonable actions of a competent attorney.

The Court recognizes that clients bear some responsibility for the strategy and direction of their case, including reviewing pleadings drafted by their attorney and orders from the court. Clients should also exhibit respect for the court, its officers and the parties. "The bankruptcy court can reasonably expect a party to police the actions of his own attorney." *Taylor v. Singh (In re Singh)*, No. CC-15-1126, 2016 WL 770195, at *7 ( B.A.P. 9th Cir. Feb. 26, 2016). Lynch admitted as much to the Court. A master of understatement, Lynch reflected that he should have stayed more on top of his case. By not reading this Court's orders – particularly its detailed Opinion and Order of Dismissal – Lynch indirectly authorized and approved of Hyde's dilatory and incompetent legal

strategy. The Court believes that he is not without blame in this fiasco.

However, Lynch is not a lawyer. The primary responsibility for the decisions and strategy resulting in disastrous outcomes for Lynch and Brooks rests with Hyde. Even if her testimony is true that the decisions to sue Judge Michael, the state district courts, the individual attorneys, and the bonafide purchasers, the decision to obstruct the Trustee, the decisions to launch meritless appeals and the decision to file a criminal complaint with the Justice Department were made jointly by herself and Lynch, she believed that this was the proper strategy to undertake and advised her client to zealously pursue it. Lynch relied on Hyde's recommendation that this strategy was soundly based in law and he relied on Hyde's expertise as a lawyer in agreeing with her recommendations.

Lynch has provided ample evidence and legal support for his position that Hyde's representation did not comply with the standards set forth in the Oklahoma Rules of Professional Conduct. The Court agrees that Hyde failed to provide competent representation, as required by Rule 1.1. She failed to comply with Rule 1.2 by failing to properly advise her client and obtain his authorization to pursue a course of action. She failed to properly communicate with Lynch and keep him reasonably informed, as required by Rule 1.4. Her fees were excessive and unreasonable, violating Rule 1.5. She filed frivolous, repetitive and baseless claims, needlessly prolonging litigation, a violation of Rules 3.1 and 2. She also obstructed the Trustee's access to evidence during his attempts to conduct a Rule 2004 exam, a violation of Rule 3.4. She caused a federal judge, private attorneys and two district courts to retain counsel to defend against unsupported, frivolous allegations as part of a legal strategy to use the legal process to gain an advantage for her client. Cumulatively, these actions constitute a violation of Rule 8.4.

## Conclusion

The absence of competency and reasonable charges, and the Court's conclusion that Hyde took advantage of Lynch and Brooks leads this Court to conclude that Hyde must disgorge all but $ 22,624.02 of the fees paid to her by Brooks on behalf of Lynch.  Pursuant to § 329(b)(2), the Court may order the return of payments it deems excessive to Brooks, as "the entity that made such payment."

A separate order and judgment of disgorgement shall be entered.

Judge Tom R. Cornish
United States Bankruptcy Judge